ACCEPTED
03-15-00019-CV
6315674
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/31/2015 3:49:43 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00019-CV

IN THE COURT OF APPEALS FOR THE THIRD JUDICIAL DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/31/2015 3:49:43 PM
JEFFREY D. KYLE
Clerk

JEFF KAISER, P.C. AND
JEFFERY BENEDICT KAISER
*Appellants,*

vs.

THE STATE OF TEXAS,
*Appellee.*

Appeal from the 98th District Court of Travis County, Texas,
No. D-1-GV-13-000790, Honorable John Wisser presiding

## BRIEF OF APPELLEE

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General
For Civil Litigation

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections
Division

Sean M. O'Neill
State Bar No. 24070354
Assistant Attorney General
sean.oneill@texasattorneygeneral.gov
Kevin R. Sauer
State Bar No. 24088355
Assistant Attorney General
kevin.sauer@texasattorneygeneral.gov
Bankruptcy & Collections Division
P.O. Box 12548, MC 008
Austin, Texas 78711-2548
Tel: (512) 475-4567
Fax: (512) 936-1409
COUNSEL FOR APPELLEE

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties to the proceedings in the trial court below, together with the names and addresses of all counsel in accordance with Texas Rule of Appellate Procedure 38.1(a):

**Defendants/Appellants:**

Jeff Kaiser, P.C. and Jeffery Benedict Kaiser

**Appellate Counsel for Defendants/Appellants:**

George F. May
TWOMEY | MAY, PLLC
2 Riverway, 15th Floor
Houston, Texas 77056

**Trial Counsel for Defendants/Appellants:**

Jeffery B. Kaiser
JEFF KAISER, P.C.
Enterprise Bank Tower
2211 Norfolk St. Ste 528
Houston, Texas 77098

Harold N. May
TWOMEY | MAY, PLLC
2 Riverway, 15th Floor
Houston, Texas 77056

**Plaintiff/Appellee:**

The State of Texas

**Appellate Counsel for Plaintiff/Appellee:**

Sean M. O'Neill
Kevin R. Sauer
OFFICE OF THE ATTORNEY GENERAL
BANKRUPTCY & COLLECTIONS
DIVISION
P.O. Box 12548
Austin, Texas 78711-2548

**Trial Counsel for Plaintiff/Appellee:**

John C. Adams
OFFICE OF THE ATTORNEY GENERAL
BANKRUPTCY & COLLECTIONS
DIVISION
P.O. Box 12548
Austin, Texas 78711-2548

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ...................................................... ii

INDEX OF AUTHORITIES .....................................................................v

ABBREVIATIONS AND RECORD REFERENCES ...........................................xi

STATEMENT OF THE CASE.................................................................. xii

STATEMENT REGARDING ORAL ARGUMENT ....................................... xiii

ISSUES PRESENTED ........................................................................xiv

STATEMENT OF FACTS ........................................................................1

    I.     Appellants' Late Filing of Tax Reports ...............................................1

    II.    The State's Filing of a Tax Lien and Suit .......................................1

    III.   Trial and Judgment.........................................................................2

SUMMARY OF THE ARGUMENT ..................................................................5

ARGUMENT AND AUTHORITIES.............................................................7

    I.     Appellants Failed to Carry the Burden of Proof on Their Affirmative Defense of Limitations .........................................7

        A.    Appellants failed to elicit evidence of a relevant date for limitations that could make suit untimely under section 111.202............................................7

        B.    Under the plain language of section 111.202, the State's filing of a tax lien made suit timely .........................10

        C.    Even under Appellants' interpretation of section 111.202, Appellants failed to produce evidence that limitations had run .........................................17

        D.    Appellants' alternative argument that a four year limitations period under the Remedies Code barred suit is contrary to express provisions of the Remedies Code ...........................................18

    II.    The State Offered Legally and Factually Sufficient Evidence to Support the Trial Court's Judgment Awarding Delinquent Taxes .........................................19

A. Appellants fail to address finding number nine, which independently supports the trial court's judgment ...............................................................19

B. The State introduced legally sufficient evidence of the franchise tax delinquency at trial................................20

C. The record contains factually sufficient evidence of the franchise tax delinquency ...........................................23

D. The Trial Certificate, standing alone, is legally and factually sufficient evidence of liability at trial ...................................................................................25

III. The State Offered Legally Sufficient Evidence to Support the Trial Court's Award of $2,500.00 in Attorney's Fees ........................................................................30

CONCLUSION AND PRAYER .......................................................................36

CERTIFICATE OF COMPLIANCE WITH RULE 9.4......................................37

CERTIFICATE OF SERVICE ...........................................................................37

iv

# INDEX OF AUTHORITIES

**CASES**                                                                                              **Page(s)**

*Ayeni v. State*,
    440 S.W.3d 707 (Tex. App.—Austin 2013, no pet.)................................27

*Barras v. Barras*,
    396 S.W.3d 154 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ...15

*Bauer v. Williams*,
    No. 03-07-00494-CV, 2008 WL 3166311
    (Tex. App.—Austin Aug. 8, 2008, no pet.)................................................32

*Bubnis v. Leander Indep. Sch. Dist.*,
    No. 03-13-00196-CV, 2015 WL 1478207
    (Tex. App.—Austin Mar. 25, 2015, no pet. h.) (mem. op.) ......................23

*Bullock v. American Heart Ass'n*,
    360 S.W.3d 661 (Tex. App.—Dallas 2012, pet. denied) ....................15–16

*Cain v. Bain*,
    709 S.W.2d 175 (Tex. 1986) ............................................................23, 25

*Calvert v. Eng'rs & Fabricators, Inc.*,
    440 S.W.2d 320 (Tex. App.—Austin 1969, writ ref'd n.r.e.) ....................9

*City of Keller v. Wilson*,
    168 S.W.3d 802 (Tex. 2005) .................................................................23

*Crowson v. Crowson*,
    No. 03-11-00795-CV, 2013 WL 6665022
    (Tex. App.—Austin Dec. 13, 2013, pet. denied) ...............................15, 18

*El Apple I, Ltd. v. Olivas*,
    370 S.W.3d 757 (Tex. 2012)...............................................32, 33, 34, 35

*Elkins v. State*,
    No. 03-98-00698-CV, 2000 WL 963160
    (Tex. App.—Austin July 13, 2000, pet. denied) .....................................19

*EMC Mortg. Corp. v. Davis*,
  167 S.W.3d 406 (Tex. App.—Austin 2005, pet denied)...........................30

*Ferrant v. Graham Assocs., Inc.*,
  No. 02-12-00190-CV, 2014 WL 1875825
  (Tex. App.—Fort Worth May 8, 2014, no pet.) .......................................33

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
  960 S.W.2d 41 (Tex. 1998) ...................................................................21

*Garibay v. State*,
  No. 03-01-00500-CV, 2002 WL 1992299
  (Tex. App.—Austin Aug. 30, 2002, no pet.)..............................................18

*Gen. Motors Corp. v. Saenz*,
  873 S.W.2d 353 (Tex. 1993) .............................................................27–28

*Hatcher v. State*,
  81 S.W.2d 499 (Tex. 1935) ....................................................................14

*Hertzberg v. Austin Diagnostic Clinic Assoc., P.A.*,
  No. 03-07-00072-CV, 2009 WL 2913620
  (Tex. App.—Austin Sept. 11, 2009, no pet.) ...........................................33

*Horvath v. Hagey*,
  No. 03-09-00056-CV, 2011 WL 1744969
  (Tex. App.—Austin May 6, 2011, no pet.) ...............................................20

*Hylton v. State*,
  665 S.W.2d 571 (Tex. App.—Austin 1984, no writ)...............................26

*In re A.B.P.*,
  291 S.W.3d 91 (Tex. App.—Dallas 2009, no pet.)..................................30

*Kawaja v. State*,
  No. 03-05-00491-CV, 2006 WL 1559343
  (Tex. App.—Austin June 8, 2006, no pet.) .......................................26, 27

*Kinnard v. Braziel Cooler-Freezer Mfg., Inc.*,
No. 10-06-00103-CV, 2007 WL 2315962
(Tex. App.—Waco Feb. 14, 2007, no pet.).....................................31, 32, 35

*Lawyers Sur. Corp. v. State*,
825 S.W.2d 802 (Tex. App.—Austin 1992, no writ)..........................13, 14

*Legere v. Legere*,
No. 03-12-00046-CV, 2013 WL 692450
(Tex. App.—Austin Feb. 22, 2013, no pet.)................................................32

*Lund v. Giauque*,
416 S.W.3d 122 (Tex. App.—Fort Worth 2013, no pet.) .........................14

*Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*,
410 S.W.3d 889 (Tex. App—Dallas 2013, no pet.)............................30, 34

*Ocean Transp., Inc. v. Greycas, Inc.*,
878 S.W.2d 256 (Tex. App.—Corpus Christi 1994, writ denied) ........8, 10

*Parker v. State*,
36 S.W.3d 616 (Tex. App.—Austin 2000, no pet.).................................29

*Parker v. State*,
40 S.W.3d 555 (Tex. App.—Austin 2001, no pet.).................................29

*Penny v. State*,
No. 03-97-00399-CV, 1998 WL 394173
(Tex. App.—Austin July 16, 1998, no pet.) (mem. op.) ..........................27

*Plas-Tex, Inc. v. U.S. Steel Corp.*,
772 S.W.2d 442 (Tex. 1989) ..................................................................23

*Randall v. Goodall & Davison, P.C.*,
No. 03-12-00005-CV, 2013 WL 3481518
(Tex. App.—Austin July 2, 2013, pet. denied) .......................................21

*Ragsdale v. Progressive Voters League*,
801 S.W.2d 880 (Tex. 1990) (per curiam) ..............................................30

*Ridge Oil Co., Inc. v. Guinn Invs., Inc.*,
    148 S.W.3d 143 (Tex. 2004) .......................................................................32

*Shepherd v. Ledford*,
    962 S.W.2d 28 (Tex. 1998) .........................................................................16

*Shields v. State*,
    27 S.W.3d 267 (Tex. App.—Austin 2000, no pet.)....................................19

*Southwestern Bell Media, Inc. v. Lyles*,
    825 S.W.2d 488 (Tex. App.—Houston [1st Dist.] 1992, writ denied) .....23

*State v. Barbee*,
    No. 03-99-00560-CV, 2000 WL 766274
    (Tex. App.—Austin June 15, 2000, pet. denied)...........................10, 11, 12

*State v. Durham*,
    860 S.W.2d 63 (Tex. 1993) .........................................................................19

*State v. Glass*,
    723 S.W.2d 325 (Tex. App.—Austin 1987, writ ref'd n.r.e) ....................26

*Sundance Oil Co. v. Aztec Pipe & Supply Co., Inc.*,
    576 S.W.2d 780 (Tex. 1978) ................................................................28, 29

*Sundown Farms, Inc. v. State*,
    89 S.W.3d 291 (Tex. App.—Austin 2002, no pet.)....................................27

*Vo Eng'g, Ltd., Co. v. Cai*,
    No. 03-13-00529-CV, 2015 WL 513269
    (Tex. App.—Austin Feb. 4, 2015, no pet. h.)....................20–21, 22, 23, 25

*Wilson v. State*,
    272 S.W.3d 686 (Tex. App.—Austin 2008, pet. denied)......................12, 13

*Wimmer v. State*,
    No. 03-03-00135-CV, 2004 WL 210629
    (Tex. App.—Austin Feb. 5, 2004, pet. denied).........................................22

*Wood v. Pyramid Cmty. Dev. Corp.*,
   No. 14-13-00990-CV, 2014 WL 6602424
   (Tex. App.—Houston [14th Dist.] Nov. 20, 2014, no pet.) .....................7, 8

*Woods v. William M. Mercer, Inc.*,
   769 S.W.2d 515 (Tex. 1988) ....................................................................7

**RULES**

Tex. R. App. P. 47.7 ....................................................................................11

Tex. R. Civ. P. 94........................................................................................24

Tex. R. Civ. P. 185......................................................................................28

Tex. R. Civ. P. 299......................................................................................20

Tex. R. Evid. 406........................................................................................25

**STATUTES**

Tex. Gov't Code § 2107.006 ...................................................................30, 34

Tex. Tax Code § 111.008............................................................................9

Tex. Tax Code § 111.013.................................................................19, 25, 27, 29

Tex. Tax Code § 111.016............................................................................29

Tex. Tax Code § 111.022............................................................................9

Tex. Tax Code § 111.060............................................................................22

Tex. Tax Code § 111.202........................................................................*passim*

Tex. Tax Code § 111.207............................................................................17

Tex. Tax Code § 113.006............................................................................16

Tex. Tax Code § 171.152............................................................................3

Tex. Tax Code § 171.255................................................................2, 29

# ABBREVIATIONS AND RECORD REFERENCES

**PARTIES:**

"Appellee" or "State" means Plaintiff/Appellee the State of Texas.

"Appellants" means Defendants/Appellants Jeff Kaiser, P.C. and Jeffery Benedict Kaiser.

"Jeffery Kaiser" means Appellant Jeffery Benedict Kaiser.

"Comptroller" means "The Comptroller of Public Accounts for the State of Texas."

**RECORD REFERENCES:**

Citations to the Clerk's Record appear as........................................"(CR [page#].)"

Citations to the Reporter's Record appear as ... "([Vol #] RR [page#] at [line#].)"

Citations to Appellants' Brief appear as............................"(Kaiser Br. [page#].)"

# STATEMENT OF THE CASE

Nature of the Case:

Appellee, the State of Texas (the "State"), filed suit to recover delinquent franchise taxes from Jeff Kaiser, P.C. The State also brought suit against the Corporation's officer Jeffery Benedict Kaiser ("Jeffery Kaiser") to recover the delinquent taxes under Texas Tax Code section 171.255.

Course of Proceedings:

Trial was to the bench on October 27, 2014. After the close of testimony, the court took the case under advisement, issuing judgment on December 2, 2014. Appellant requested findings of fact and conclusions of law and the trial court issued such findings and conclusions on December 22, 2014.

Trial Court:

The 98th District Court, Travis County, Texas; the Honorable John Wisser, presiding.

Trial Court's Disposition:

The trial court entered final judgment for the State. The final judgment found Appellants jointly and severally liable to the State for $34,776.53 in franchise tax and interest, $2,500 in attorney's fees, as well as post-judgment interest.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe that oral argument is necessary to resolve this appeal because the appeal involves a limited record and Appellants' primary issue regarding the statute of limitations may be resolved by Appellants' failure to adduce any evidence to support the defense. However, if this Court determines that oral argument is required, Appellee requests time to present their position to the Court.

## ISSUES PRESENTED

1. Where Appellants adduced no evidence of a relevant date that fell more than three years prior to suit, did they fail to carry their burden to establish the affirmative defense of limitations under section 111.202 of the Texas Tax Code?

2. Where the last filed tax lien was filed within three years of the State filing suit, is suit timely under the plain language of section 111.202 of the Texas Tax Code?

3. Where Appellants filed tax reports reciting an amount owed, did not plead payment, and adduced no evidence of payment, was the Court's judgment that the tax debt remained due and owing legally and factually insufficient?

4. Where the State's attorney testified about his experience, the complexity of the case, the total amount of fees, and the reasonableness of the fees, was there legally sufficient evidence to award $2,500.00 in attorney's fees after a bench trial?

## STATEMENT OF FACTS

### I.     Appellants' Late Filing of Tax Reports

Jeffery Benedict Kaiser ("Jeffery Kaiser") is the sole officer and director of Jeff Kaiser, P.C.  (3 RR 26.)  Jeff Kaiser, P.C. was incorporated in Texas in mid-2001.  (3 RR 25.)  Jeff Kaiser, P.C. failed to file its initial franchise tax report.  In 2003, the Comptroller of Public Accounts for the State of Texas ("Comptroller") forfeited Jeff Kaiser, P.C.'s corporate privileges for failure to file the report.  (*Id.*)

In August of 2008, Jeffery Kaiser filed bankruptcy.  (3 RR 26.)  On December 22, 2008, during the pendency of the bankruptcy, Jeffery Kaiser late-filed franchise tax reports for Jeff Kaiser, P.C. for the reporting years of 2004, 2005, 2006, and 2007.  (3 RR 25.)  The reports showed $32,579.00 in franchise tax due on gross receipts of more than one million dollars.  (3 RR 10–11, 14–15, 17–18, 21–22.)  Neither Jeffery Kaiser nor Jeff Kaiser, P.C. remitted the franchise tax stated on those reports to the Comptroller.  On July 15, 2009, Jeffery Kaiser's Chapter 7 bankruptcy case was concluded; he received a general discharge.  (3 RR 26.)

### II.    The State's Filing of a Tax Lien and Suit

On April 15, 2013, the Comptroller filed a State Tax Lien against Jeff Kaiser, P.C. for the delinquent franchise taxes.  (2 RR 12–13; 3 RR 8–9, 26.)  On August 2, 2013, the State of Texas ("State") filed suit on behalf of the Comptroller

1

against Jeff Kaiser, P.C. and Jeffery Kaiser to recover the unpaid franchise taxes, plus applicable penalties and interest. (CR 3–10.) The State alleged that Jeffery Kaiser was individually liable for the unpaid franchise taxes under section 171.255 of the Texas Tax Code ("Tax Code"), which makes the officer of a corporation whose corporate privileges have been forfeited for failure to file a report individually liable for all debts of the corporation incurred after the due date of the report. (CR 4.)

## III. Trial and Judgment

The trial on the State's claims was before Judge John Wisser, presiding over the 98th District Court of Travis County, Texas. At trial, the State and Appellants entered into evidence a Joint Stipulation that resolved numerous factual issues. (2 RR 6 at 11–13; 3 RR 25–30.) Trail witnesses included Rose Fitzgerald, an investigator from the Office of the Attorney General, and Jeffery Kaiser.

Ms. Fitzgerald testified to her experience with the investigation of tax debts owed to the Comptroller and her experience with the Comptroller's mainframe computer system. (2 RR 9–10.) In her testimony, she authenticated a Texas Comptroller's Certified Claim for Texas Franchise Tax ("Trial Certificate"), which stated the amount of the State's claim, and testified as to the calculation of the interest that had accrued from the date included in the Trial Certificate to the

2

date of trial. (2 RR 10–11.) Ms. Fitzgerald also authenticated a computer printout from the Comptroller's mainframe system, which itemized the franchise tax delinquency as of the date of trial, and the tax lien filed by the Comptroller on April 15th, 2013. (2 RR 11–13.)

Mr. Kaiser testified that he was the "sole shareholder" of Jeff Kaiser, P.C. and that he had signed and late-filed[1] the franchise tax reports for Jeff Kaiser, P.C. for the reporting years of 2004, 2005, 2006, and 2007 on December 22, 2008. (2 RR 14–21.) Mr. Kaiser noted that the reports included interlineations that involved a line drawn through the amount owed and a zero written to the side. (*Id.*) Mr. Kaiser testified that he had not made the interlineations. (*Id.*)

The State's attorney, John Adams, recalled Ms. Fitzgerald to inquire about the interlineations. (2 RR 23–24.) She testified that an interlineated zero indicated that the reported amount was not paid when the report was filed and that the Comptroller's practice when a taxpayer files a report but doesn't remit payment is "[g]enerally, this very thing, we'll either draw a line across the amount that is due and put a zero on there to show no payments were paid towards this amount." (2 RR 25–26.)

---

[1] The correct due dates for these franchise tax reports were March 15, 2004, March 15, 2005, March 15, 2006, and March 15, 2007 respectively. Tex. Tax. Code § 171.152(c).

Mr. Adams then testified as to attorney's fees. He first addressed his experience and noted that the case was "somewhat more complex" than the average tax case because it involved issues of the effect of bankruptcy on franchise taxes and the application of a statute of limitations. (2 RR 27–28.) He testified that he had spent at least 10 hours "working on legal research, reviewing the documents, drafting and preparing for a hearing on a motion for summary judgment and attending the motion for summary judgment hearing." (2 RR 28.) He then testified that his time would be "worth at least" $250.00 per hour. (2 RR 29.) Appellants' counsel moved to strike Mr. Adams' testimony, arguing that Mr. Adams was required to produce detailed time records. (2 RR 29–31.) Appellants' counsel did not secure a ruling on Appellants' oral motion to strike. (2 RR 31 at 12–14.)

After testimony was complete, Appellants' counsel moved to withdraw stipulation number 12, which stated that the "franchise taxes delinquent from Jeff Kaiser, P.C. are accurately stated and quantified in Exhibit B to Plaintiffs Original Petition[.]" (2 RR 33–34; 3 RR 26.) The State agreed to withdrawal of the stipulation. (2 RR 34 at 21–22.) The trial court subsequently entered judgment for the State for $34,776.53 in franchise taxes and $2,500.00 in attorney's fees. (CR 81.) Pursuant to Appellants' request, the trial court issued findings of fact and conclusions of law. (CR 82–87.) The trial court's findings include a finding

4

that on "the date of trial of this case, the sum of $34,776.53 in franchise taxes, penalties and interest was due from Jeff Kaiser, P.C." (CR 85.) Appellants then timely initiated this appeal. (CR 88–89.)

## SUMMARY OF THE ARGUMENT

Appellants argue that the trial court erred in failing to dismiss the State's claims on the basis of limitations. Appellants fail to acknowledge that, as an affirmative defense, the burden was on Appellants to establish their defense of limitations. Under the relevant statute, section 111.202 of the Tax Code, the State has three years to file suit from 1) the date a deficiency determination becomes due, 2) the date a jeopardy determination becomes due, or 3) the last filing of a tax lien. Appellants offered no evidence of the date a deficiency or jeopardy determination became due, and the only evidence of a tax lien was a lien filed within months of suit. Because Appellants failed to offer, let alone seek admission of, evidence that would demonstrate that a limitations period began more than three years prior to suit, they could not carry their burden to show that one expired prior to suit.

In any event, under the plain language of section 111.202, the State's filing of a tax lien made suit timely. The statute allows suit within three years of the *last* filed lien. Because the State's *first* lien was filed less than four months prior to suit, suit was timely under the statute.

5

Appellants also argue that the trial court's judgment was 1) based solely on the prima facie evidentiary effect of the Comptroller's Trial Certificate and 2) that the admission of tax reports with interlineations vitiated any evidentiary effect of the Trial Certificate. Appellants are wrong on both counts. The trial court made a finding of fact sufficient to support entry of the judgment, which stated that on "the date of trial of this case, the sum of $34,776.53 in franchise taxes, penalties and interest was due from Jeff Kaiser, P.C." (CR 85.) Nothing in that finding requires reference to the Trial Certificate. Because the finding was supported by legally and factually sufficient evidence, including tax reports filed by Jeffery Kaiser stating the amounts due and a document from the Comptroller stating the current balance, the judgment is supported by legally and factually sufficient evidence without reference to the Trial Certificate.

The Trial Certificate, however, independently supports the judgment. Appellants assert that the admission of tax reports with interlineations by the Comptroller eliminates the prima facie effect of the Trial Certificate. This Court has held that the heavy burden placed on a taxpayer opposing a Comptroller's certificate at trial requires the taxpayer to conclusively establish that he owes no tax. The State admitted testimony that the Comptroller's practice is to make interlineations identical to those in Appellants' reports when payment is not remitted with filed reports. Therefore, there is evidence that such interlineations

are consistent with the existence, not absence, of Appellants' tax liability. Because Appellants did not conclusively prove that they owed no tax, the Trial Certificate is sufficient evidence to support entry of the judgment.

Finally, Appellants challenge the award of $2,500.00 in attorney's fees, asserting that the absence of documentary evidence requires reversal. Documentary evidence is not a prerequisite in Texas to recovery of traditional attorney's fees. Because the State's attorney testified to his experience, the complexity of the case, the services he performed, and that $2,500.00 was a reasonable fee for those services, the award of attorney's fees is proper.

## ARGUMENT AND AUTHORITIES

I. **Appellants Failed to Carry the Burden of Proof on Their Affirmative Defense of Limitations**

A. **Appellants failed to elicit evidence of a relevant date for limitations that could make suit untimely under section 111.202.**

Appellants had the burden of proof at trial to prove that the State did not timely file suit; they failed to carry this burden. *Wood v. Pyramid Cmty. Dev. Corp.*, No. 14-13-00990-CV, 2014 WL 6602424, at *9 (Tex. App.—Houston [14th Dist.] Nov. 20, 2014, no pet.) (citing, *inter alia*, *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). Under section 111.202 of the Tax Code, suit is timely if filed within 3 years after a deficiency or jeopardy determination has become due and payable <u>or</u> within 3 years after the last

7

recording of a state tax lien. Tex. Tax Code § 111.202. Because Appellants did not offer any evidence of the date a deficiency or jeopardy determination became due and payable and because the first recording of a state tax lien occurred within three years of suit, the trial court did not err in denying Appellants' affirmative defense. *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 268 (Tex. App.—Corpus Christi 1994, writ denied) (overruling defendant's limitations challenge following jury trial where defendant failed to prove when limitations accrued).

Surprisingly, Appellants admit that no evidence of the date of a deficiency determination or jeopardy determination was adduced at trial. (Kaiser Br. 15, 17, 23, 25, 26, 31.) Appellants fail to appreciate that *they* bore the relevant burden to admit this evidence.[2] *Wood*, 2014 WL 6602424, at *9.

At trial and on appeal, Appellants make the awkward legal argument that their failure to produce any evidence as to the date a deficiency or jeopardy determination became due means that limitations should run from the date that

---

[2] Appellants erroneously assert that the absence of evidence of the date of a deficiency or jeopardy determination means that no determination or assessment occurred. (Kaiser Br. 25 ("The Comptroller did not audit, assess, or otherwise disagree with the tax due on the reports filed by Jeff Kaiser, P.C."); Kaiser Br. 26 ("There was no timely assessment of additional taxes, no jeopardy determination, and no deficiency determination.").) This is a logical fallacy. Where the only burden either side had was Appellants' burden to establish the *date* of a jeopardy or deficiency determination, their failure to do so cannot establish non-occurrence of a determination.

8

Appellants chose to late-file their franchise tax reports. (Kaiser Br. 18, 22, 23.) But that date has no support in the text of the statute. Tex. Tax Code § 111.202.[3]

Section 111.202 has three specific dates that are relevant to limitations: the date a deficiency determination became due and payable, the date that a jeopardy determination became due and payable, or the last filing of a lien. The filing date of a late-filed tax report is none of these. The Tax Code makes clear that a deficiency determination occurs after the Comptroller exercises his discretion and determines he "is not satisfied with a tax report or the amount required to be paid" in the report. Tex. Tax Code § 111.008. Similarly, a jeopardy determination is a discretionary determination when the "comptroller believes" collection is jeopardized by delay. Tex. Tax Code § 111.022. Appellants' unilateral action of late-filing cannot automatically trigger either of these *discretionary* determinations.

Appellants could have elicited testimony as to the date of any deficiency or jeopardy determination, but did not. Such determinations are generally noticed by virtue of a letter sent to the taxpayer, a record of which is kept by the Comptroller. Tex. Tax Code § 111.008(b). Thus, Kaiser himself could have

---

[3] Furthermore, this Court has considered this argument under pre-codification tax statutes and rejected it because such an interpretation would render "the four-year period for making deficiency determinations . . . meaningless." *See Calvert v. Eng'rs & Fabricators, Inc.*, 440 S.W.2d 320, 325 (Tex. App.—Austin 1969, writ ref'd n.r.e.) (interpreting Article 20 of Title 122A, Taxation-General, the predecessor to the Texas Tax Code).

testified to the date he received such a letter. Or Appellants could have questioned the State's witness, Rose Fitzgerald, as to the date either determination was made. Or Appellants could have propounded discovery on the State and then admitted Comptroller records into evidence. Appellants took none of these actions; instead Appellants asserted that limitations ran from a date with no support in section 111.202. In doing so, Appellants failed to establish the defense of limitations. *See Ocean Transp.*, 878 S.W.2d at 268 (overruling defendant's limitations challenge following jury trial where defendant failed to prove when limitations accrued).

**B. Under the plain language of section 111.202, the State's filing of a tax lien made suit timely.**

The plain language of section 111.202 states that the Comptroller "may bring an action in the courts of this state" to recover taxes "at any time within three years after the last recording of a lien." Tex. Tax Code § 111.202. It is uncontested that the State filed its first tax lien against Jeff Kaiser, P.C. on April 15, 2013 and filed suit on August 2, 2013. (*See* 3 RR 26.) Under the plain language of the statute, suit was filed within three years after the last recording of a lien and was therefore timely. *See State v. Barbee*, No. 03-99-00560-CV, 2000 WL 766274, at *4 (Tex. App.—Austin June 15, 2000, pet. denied) (not designated for publication) (holding suit timely because lien was filed within three years after the last recording of a lien).

Appellants assert that the statute's plain language cannot be taken at face value. But that is exactly what this Court did in *Barbee*, the only case to consider the lien language.[4] There, the taxpayer asserted that limitations on one of the State's claims had run in 1992, more than three years before the State filed suit, because a "Tax Statement of Account" sent out in 1989 was a deficiency or jeopardy determination. *Barbee*, 2000 WL 766274, at *4. While the State disputed the taxpayer's characterization of the notice and argued that later notices issued in 1994 constituted the original deficiency determination, the *Barbee* Court held that, "more importantly," the suit was timely because the State had filed its first lien against Barbee in 1995, less than "nine months before it filed suit." *Id*. The *Barbee* Court made it clear that the 1995 lien and the 1994 deficiency notices each made suit timely without regard to whether a deficiency or jeopardy determination was made more than three years earlier in 1989:

> Even if we were to assume Barbee is correct that the October 1989 "Statement of Account" was a deficiency or jeopardy determination for purposes of section 111.202, the State nevertheless filed its lien against Barbee on February 20, 1995, just nine months before it filed suit. Because it filed suit within three years after this "last recording of a lien" and within three years after sending Barbee the "Notices of Tax Due," we conclude that the State's suit on the March 1989 taxes is not barred by any statute of limitations.

---

[4] *Barbee* was issued prior to January 1, 2003 and was not designated for publication. It is therefore not binding precedent on this Court, but may be cited and considered for its persuasive value. Tex. R. App. P. 47.7.

11

*Id.* This holding in *Barbee* is entirely consistent with the result reached by the trial court below. The State filed its first lien on April 15, 2013 and the State filed suit on August 2, 2013, less than four months later. (*See* 3 RR 26.) As in *Barbee*, "the State's suit [for] taxes is not barred by any statute of limitations." 2000 WL 766274, at *4.

*Barbee* is incompatible with Appellants argument that the State "must initiate a lawsuit within three years of the date the taxes were due" unless "the State files a lien against the taxpayer within the limitations period[.]"[5] (Kaiser Br. at 13.) In *Barbee,* the taxes at issue were "due and payable in March 1989," but the State's first lien was not filed until 1995, more than three years later. 2000 WL 766274, at *3–4.

Choosing not to address *Barbee*, Appellants cite *Wilson v. State*, 272 S.W.3d 686 (Tex. App.—Austin 2008, pet. denied), and imply that its statement that "the Comptroller may bring an action . . . within three years after the deficiency has become due and payable" stands for the proposition that the date a tax becomes due and payable triggers the running of a three-year limitations

---

[5] Appellants' interpretation of the statute is a moving target. (*Compare, e.g.,* Kaiser Br. at 17–18 ("the State had three years from the date the taxes were due to file either a lien or a lawsuit") *with* Kaiser Br. at 31 ("A lien must be filed during the [four year] time in which a tax may be assessed . . .")). The above quoted formulation is the interpretation set forth in Appellants' "Issues Presented." (Kaiser Br. at 13).

period. (Kaiser Br. at 30 (arguing that limitations should run from the "day a late report is filed[,]" because that is when the tax became "due and payable")).) *Wilson* provides no support for this proposition. Appellants' citation to *Wilson* is selective and misleading; the following sentence in the opinion clarifies that the relevant date the "*deficiency* has become due and payable" for section 111.202 purposes, absent tolling, was August 18, 2003. *Wilson*, 272 S.W.3d at 689 (emphasis added). A brief review of the facts recited in *Wilson* makes plain that August 18, 2003 was the date a deficiency determination became due, not the date the underlying taxes—for the period from April 1999 through January 2003— became due. *Id.* at 687 ("[The] Comptroller . . . commenced a sales tax audit of Wilson Nursery for the period of April 1, 1999, through January 31, 2003" and "the Comptroller sent Wilson Nursery a notification of audit results. The notification stated that . . . the amount would become final on August 18, 2003[.]"). Thus, *Wilson* provides no support to Appellants' argument; instead, it reinforces a plain language interpretation of section 111.202.

Appellants also cite to dicta from *Lawyers Surety Corporation v. State*, 825 S.W.2d 802 (Tex. App.—Austin 1992, no writ). (Kaiser Br. 27–29.) The issue in *Lawyers Surety* was not construction of section 111.202; instead, the issue was whether section 111.202 applied to the claim at all. *Lawyers Sur.*, 825 S.W.2d at 803. In *Lawyers Surety*, the State brought suit against a surety to recover the value

of bonds issued by the surety to secure gasoline and diesel fuel taxes. *Id*. at 802–03. The State *expressly conceded* that, as to the taxpayer, limitations had run and barred suit, but argued that the claim against the surety was not barred. *Id*. at 803. The *Lawyers Surety* Court held that the bond was "simply collateral security and incidental to the taxpayer's statutory obligation" and that under controlling Supreme Court precedent "action is also barred on the bond" where "when suit is barred for breach" of the taxpayer's liability. *Id.* (citing *Hatcher v. State*, 81 S.W.2d 499 (Tex. 1935)). The language cited by Appellants is obiter dictum arising after this Court had already found its decision governed by controlling Supreme Court authority and merely supplies additional rationale for the proposition that *if* limitations "is established, it should apply to the surety as well as the principal[,]" which is an issue not present in this case. *Id*. at 804; *see also Lund v. Giauque*, 416 S.W.3d 122, 129 (Tex. App.—Fort Worth 2013, no pet.) ("Obiter dictum is a statement not necessary to the determination of the case and that is neither binding nor precedential.").

Appellants also contend for the first time on appeal that, because the lien enumerated only the 2004 taxes, it is only applicable to limitations for that year.[6] (Kaiser Br. 33.) Appellants are estopped from making this argument because they

---

[6] Again, this argument ignores the fact that it was Appellants' burden to prove limitations. *Wood*, 2014 WL 6602424, at *9.

14

stipulated that the lien was "for the delinquent Franchise Taxes." (3 RR 26.) Other stipulations make clear that the language "the delinquent Franchise Taxes" refers to all taxes sued upon and not merely those arising in a particular year. (*See* 3 RR 25–26 (Joint Exhibit 1, referring to the "franchise taxes" that are "delinquent" as those that were those included in the Comptroller's certificate, which references all four years, which was attached to the joint exhibit).) Appellants also waived this argument because they did not make it below,[7] did not challenge an express finding that the lien was "for the taxes . . . owed . . . for the tax years 2004, 2005, 2006, 2007," and because they do not cite to a single case or statute in their brief to support the argument. *See Crowson v. Crowson*, No. 03-11-00795-CV, 2013 WL 6665022, at *7 (Tex. App.—Austin Dec. 13, 2013, pet. denied) (holding that an alternative argument that document failed to meet a particular statutory requirement was waived by appellant's failure to raise the claim in trial court); *Barras v. Barras*, 396 S.W.3d 154, 169 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (failure to request additional or amended findings of fact relevant to defendant's limitations defense waived the defense); *Bullock v. American Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012,

---

[7] In the trial transcript, there are only three references to the year 2004; each of those involves the 2004 tax report, not the lien. (2 RR 16 at 9–11, 17 at 3–12.)

15

pet. denied) ("Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint.").

In any event, any tax lien "is sufficient to cover all taxes of any nature" accrued "before or after the filing of the notice." Tex. Tax Code § 113.006.[8] Thus, the lien filed for the 2004 franchise tax report year also secures Appellants' unpaid taxes for the report years 2005, 2006, and 2007. Appellants' argument would lead to the absurd result that a lien, which when foreclosed would allow recovery of all taxes at issue, would be insufficient for limitations purposes as to those same taxes. No language in section 111.202 supports Appellants' argument. Rather, section 111.202 allows suit to recover the "amount delinquent[,]" not the amount enumerated in a lien. Tex. Tax Code § 111.202. The Court should reject Appellants' argument that the lien is only relevant to limitations for a claim for 2004 taxes because Appellants are estopped from making this argument by their own stipulation and because the argument is not supported by any provision of the Tax Code. *See Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (holding that defendants were estopped from re-arguing facts that appeared in a stipulation to the trial court because such facts were "judicially admitted").

---

[8] This is also clearly stated on the lien admitted into evidence in this case. (3 RR 8.)

**C. Even under Appellants' interpretation of section 111.202, Appellants failed to produce evidence that limitations had run.**

Though Appellants construction of the statute below and on appeal is inconsistent, they admit that a lien is valid for limitations purposes if filed within the four year assessment period. (Kaiser Br. 31 ("A lien must be filed during the time in which a tax may be assessed . . ."), 40 ("If the State had, before [the date assessment limitations expired,] filed a lien, the State could have extended the time it had to initiate this action . . .").) Appellants argue that the assessment period[9] began running on December 22, 2008, when they late-filed their reports. But Appellants ignore Tax Code section 111.207, which states that a "bankruptcy case . . . suspends the running of the period . . . for the assessment of any tax." Tex. Tax Code § 111.207. Here, the franchise tax reports were filed during the pendency of Jeff Kaiser's bankruptcy, which was concluded on July 15, 2009. (3 RR 26, 28 (Joint Exhibit 1, stipulations No. 14, No.16, and discharge document).) Thus, the assessment period would only begin to run on July 16, 2009 and would then conclude on July 16, 2013, three months *after* the State filed its lien. (CR 85.) Because Appellants concede that a lien filed within the assessment window is valid for limitations purposes and the stipulated facts demonstrate that the lien was filed within that assessment window, suit could not be barred by limitations. (Kaiser Br. 31–32; 3 RR 26.)

**D. Appellants' alternative argument that a four year limitations period under the Remedies Code barred suit is contrary to express provisions of the Remedies Code.**

Appellants briefly argue that, if this suit is not barred by Tax Code section 111.202, "the Court should . . . find the State's claims subject to the Texas Civil Practice and Remedies Code, section 16.004's 4-year statute of limitations on the collection of a debt or the 4-year residual statute of limitations in section 16.051." (Kaiser Br. at 33.) As with many arguments raised in Appellants' brief, this argument was not asserted below, and is therefore waived. *See Crowson*, 2013 WL 6665022, at *7. But even if not waived, the argument is easily rebutted. The State is never subject to the limitations periods provided by either of these statutes. Under section 16.061 of the Texas Civil Practices and Remedies Code, "[a] right of action of this state or a political subdivision of the state . . . is not barred by any of the following sections: 16.001–16.004, [and] 16.051[.]" *See Garibay v. State*, No. 03-01-00500-CV, 2002 WL 1992299, at *3 (Tex. App.—Austin Aug. 30, 2002, no pet.) (not designated for publication) (rejecting application of statute of limitations found in section 16.003 of the Civil Practices and Remedies Code to the State's tort claim to recover unpaid taxes on the basis of section 16.061). Thus, absent any restrictions imposed by the Tax Code, the State would not be subject

---

[9] Assessment limitations was not pled as a defense, nor was it raised at trial. (CR 11–12.) Additionally, Appellants did not seek or secure any finding related to an assessment limitations defense. (CR at 82–87.)

to sections 16.004 or 16.051, and as with other debts, could never be barred from collecting a tax debt. *See Elkins v. State*, No. 03-98-00698-CV, 2000 WL 963160 at \*2, n. 3 (Tex. App.—Austin July 13, 2000, pet. denied) (not designated for publication) (holding that under section 16.061, claim by State to recoup student loan debt was not subject to limitations); *c.f. Shields v. State*, 27 S.W.3d 267, 275 (Tex. App.—Austin 2000, no pet.) (citing *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993) for the general proposition that "the State in its sovereign capacity is not subject to the defense of limitations").

## II. The State Offered Legally and Factually Sufficient Evidence to Support the Trial Court's Judgment Awarding Delinquent Taxes

### A. Appellants fail to address finding number nine, which independently supports the trial court's judgment.

In Section III of their brief, Appellants challenge the legal and factual sufficiency of the State's evidence at trial. (Kaiser Br. 34–38.) Appellants' argument rests on a flawed assumption that the trial court's judgment necessarily relies *only* on the prima facie evidence provided by the Comptroller's Trial Certificate pursuant to Tax Code section 111.013 of the Tax Code. (*See* Kaiser Br. 19, 35, 37, 41 (repeatedly arguing that State "relied entirely upon the presumption" and "introduced no other evidence").) Appellants appear to argue—without citation to supporting authority—that the inclusion of a conclusion of law stating that the Trial Certificate constituted prima facie

19

evidence means that 1) the trial court did not consider or weigh any other evidence, and 2) that the judgment may only be supported by the Trial Certificate. (*See* Kaiser Br. 11, 13, 19, 36, 37, 38, 41 (arguing that the trial court "did not engage in any weighing of the evidence").) Appellants' argument requires this Court to ignore not only case law regarding omitted findings[10], but also an express finding by the trial court that on "the date of trial of this case, the sum of $34,776.53 in franchise taxes, penalties and interest was due from Jeff Kaiser, P.C." [11] (CR 85.) The finding makes no mention of the Trial Certificate or prima facie evidence and itself independently supports the judgment. The trial court's judgment should be affirmed because there is legally and factually sufficient evidence, beyond the Trial Certificate, to support this finding.

**B. The State introduced legally sufficient evidence of the franchise tax delinquency at trial.**

To successfully challenge the legal sufficiency of an adverse finding on which Appellants did not have the burden of proof at trial, they "must demonstrate that there is no evidence to support the adverse finding." *Vo Eng'g, Ltd., Co. v.*

---

[10] An appellate court presumes any omitted findings favorable to the judgment where: (1) an element of the ground of recovery was included in the findings of fact; (2) the omitted element has not been properly requested; and (3) the omitted finding is supported by the evidence. *See* Tex. R. Civ. P. 299; *Horvath v. Hagey*, No. 03–09–00056–CV, 2011 WL 1744969, at *6 (Tex. App.—Austin May 6, 2011, no pet.).

[11] Given the existence of this finding, Appellants' assertion that "[t]he trial court's [sic] made no finding of fact concerning the evidence of delinquency" is baseless. (Kaiser Br. 36–37.)

*Cai*, No. 03-13-00529-CV, 2015 WL 513269, at \*2 (Tex. App.—Austin Feb. 4, 2015, no pet. h.). Anything more than a mere scintilla of evidence is legally sufficient to support a finding. *Id.* (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)); *see also Randall v. Goodall & Davison, P.C.*, No. 03-12-00005-CV, 2013 WL 3481518, at \*5 (Tex. App.—Austin July 2, 2013, pet. denied) (mem. op.) (reversing trial court's grant of summary judgment dismissing negligence claims because plaintiff produced more than a mere scintilla of evidence in response to defendant's no-evidence summary judgment motion).

Contrary to Appellants' claim that "[t]he State introduced no evidence other than the Comptroller's 'trial' certificate," the State introduced ample evidence of Appellants' franchise tax delinquency at trial.[12] (*See* Kaiser Br. 37.) At trial, in addition to the Trial Certificate, (3 RR 5), the State introduced a printout from the Comptroller's mainframe system showing the franchise tax delinquency as of the date of trial, (3 RR 7), and copies of Jeff Kaiser, P.C.'s Texas Corporation Franchise Tax Reports for the 2004, 2005, 2006, and 2007 reporting years signed by Appellant Jeffery Kaiser, (3 RR 10–11, 14–15, 17–18, 21–22).[13] These

---

[12] Appellants do not challenge the sufficiency of the evidence to support Jeffery Kaiser's individual liability for the debts of Jeff Kaiser, P.C.

[13] Appellee additionally introduced a document reflecting the interest calculation from the date of the Trial Certificate to the date of trial (3 RR 6.)

documents were admitted into evidence without objection. (2 RR 12 at 5–8, 21 at 19–22.)

Appellant Jeffery Kaiser admitted at trial that he signed the Franchise Tax Reports for the 2004, 2005, 2006, and 2007 reporting years on behalf of Jeff Kaiser, P.C. (2 RR 17 at 3–5, 18 at 2–4, 19 at 8–11, 20 at 7–8.) The Franchise Tax Reports stated the amount of franchise tax due, the Comptroller's printout demonstrated that the amount remained delinquent, and section 111.060 of the Tax Code provides the rate at which interest accrues on such delinquent taxes. The evidence is much more than a scintilla; the trial court could have relied on these documents, taken judicial notice of the pre-judgment interest section of the Tax Code, and calculated the exact amount awarded. *See, e.g.*, *Vo Eng'g*, 2015 WL 513269, at \*2; *see also Wimmer v. State*, No. 03-03-00135-CV, 2004 WL 210629, at \*4–5 (Tex. App.—Austin Feb. 5, 2004, pet. denied) (affirming calculation of interest on tax claim by court).

**C. The record contains factually sufficient evidence of the franchise tax delinquency.**

To mount a successful challenge to the factual sufficiency of the evidence on an issue, Appellants must show that the finding is "so contrary to the evidence as to be clearly wrong and manifestly unjust." *Vo Eng'g*, 2015 WL 513269, at *2 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). In making its determination, a reviewing court must consider all evidence supporting and contradicting the challenged finding. *Bubnis v. Leander Indep. Sch. Dist.*, No. 03-13-00196-CV, 2015 WL 1478207, at *4 (Tex. App.—Austin Mar. 25, 2015, no pet. h.) (mem. op.) (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)) (overruling factual sufficiency challenge to judgment rendered following jury verdict). Where trial is to the bench, the trial court is the "sole judge of the credibility of the witnesses" and "[a]s long as the evidence falls 'within the zone of reasonable disagreement,'" appellate courts should not substitute their judgment for that of the trial court. *Vo Eng'g*, 2015 WL 513269, at *2 (citing *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

Appellants' factual sufficiency challenge appears to be based on handwritten interlineations of lines through the amount of tax due stated on each of the four Texas Franchise Reports and the appearance of "0's" next to those

23

lines. (*See* Kaiser Br. 35, 37–38; 3 RR 10, 14, 17, 21.) Appellants claim that "[t]he State's sole fact witness testified that she had reviewed but no personal knowledge [sic] of the statement made in the Comptroller's certificate, and admitted that the Comptroller's office had altered the tax reports to put 'zero' as the tax due without explanation."[14] (*See* Kaiser Br. 35 (citing 2 RR 26–27).) This is a misstatement of the trial testimony and ignores the substance of the State's fact witness's testimony.

The State presented testimony from Rose Fitzgerald, an investigator at the Office of the Attorney General's Bankruptcy and Collections Division with knowledge of the practices of the Comptroller derived from over 20 years of experience handling collections of delinquent taxes. (2 RR 24 at 15–17.) Ms. Fitzgerald testified that when a taxpayer files a tax report, but fails to remit payment with that report, Comptroller's staff will generally "draw a line across the amount that is due and put a zero on there to show no payments were paid towards this amount." (2 RR 24 at 21–25, 25 at 1.) Despite the existence of this clear and direct explanation, Appellants have not merely ignored Ms. Fitzgerald's

---

[14] Appellants never proposed a factual scenario that explains how interlineations *made by the Comptroller* to tax returns filed by Jeffery Kaiser could alter Appellants' liability. To the extent Appellants argue that the interlineations could create a fact issue as to whether the Comptroller released or discharged Jeff Kaiser, P.C.'s liability or that Jeff Kaiser, P.C. paid the tax, these are all affirmative defenses that were not pled or argued and would be Appellants' burden to establish. *See* Tex. R. Civ. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, . . . discharge in bankruptcy, . . . payment, release, . . . waiver, and any other matter constituting an avoidance or affirmative defense.").

testimony, they have baldly asserted that Ms. Fitzgerald "admitted that the Comptroller's officer had altered the tax reports to put 'zero' as the tax due *without explanation*." (Kaiser Br. 16 (emphasis added).)

Ms. Fitzgerald's testimony provided evidence that the Comptroller's routine practice is to mark out the amount due and put a zero next to that amount when a taxpayer submits a report without making a payment. *See* Tex. R. Evid. 406.[15] This explanation fully accounts for the interlineations in a manner that supports the continued existence of the debt and therefore the judgment. Even if reasonable minds could disagree as to the credibility of Ms. Fitzgerald's testimony or the meaning of the interlineations on the Franchise Tax Reports, under the proper standard of review, Appellants' factual sufficiency challenge must fail because the trial court's finding that the franchise tax debt remained due is not "so contrary to the evidence as to be clearly wrong and manifestly unjust." *See Vo Eng'g*, 2015 WL 513269, at *2 (citing *Cain v. Bain*, 709 S.W.2d at 176).

**D.    The Trial Certificate, standing alone, is legally and factually sufficient evidence of liability at trial.**

Independent of the legal and factual sufficiency argument above, the Trial Certificate is, pursuant to section 111.013 of the Tax Code, prima facie evidence

---

[15] "Habit; Routine Practice – Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." Tex. R. Evid. 406.

of the debt sufficient to support the trial court's judgment. Citing law related to other statutes and to judicially-created presumptions, while ignoring cases addressing the very statute at issue here, Appellants erroneously argue that the Trial Certificate has no evidentiary value because the interlineations on the reports created a "fact issue" as to liability. (Kaiser Br. 11, 19, 36–37, 41.) As this Court's precedent makes clear, a Comptroller's certificate is sufficient to support a judgment even where a defendant admits evidence to dispute the tax liability.

This Court has long held that to overcome the prima facie effect of Comptroller's certificates "the taxpayer must conclusively establish that he owes no tax." *Kawaja v. State*, No. 03-05-00491-CV, 2006 WL 1559343, at *2 (Tex. App.—Austin June 8, 2006, no pet.) (citing *State v. Glass*, 723 S.W.2d 325, 327 (Tex. App.—Austin 1987, writ ref'd n.r.e.)). The taxpayer must present "evidence tending to support the contrary as would be conclusive, or evidence which would be so clear and positive it would be unreasonable not to give effect to it as conclusive." *Id.* (citing *Hylton v. State*, 665 S.W.2d 571, 572 (Tex. App.—Austin 1984, no writ)). In *Kawaja*, the defendant, by affidavit, stated that his business records were destroyed by a flood, that he applied a low markup on beer, and that he had never sold tobacco products, presumably challenging the basis for the audit. *Id.* at *2–3. This Court held that defendant had not overcome the prima facie effect of the Comptroller's certificate because he had not "come forward

26

with evidence conclusively establishing that he owed no tax." *Id.* at *2. Here, Appellants did not come forward with *any* testimony suggesting that they did not owe tax and Appellants have never contended that they paid the franchise taxes they reported owing to the Comptroller. Instead, they rely on interlineations in tax documents for which the record contains an explanation that does not relieve them of liability. *See supra*, at II.C. Because Appellants' evidence is far less conclusive than evidence this Court has previously found insufficient to defeat judgment based on a Comptroller's certificate,[16] the evidence cannot require reversal here.

Appellants largely ignore cases addressing section 111.013 of the Tax Code. Instead they cite to a case involving a judicially-created presumption for their argument that "when the party benefiting from a presumption introduces evidence contrary to the evidence on which the presumption is based, the presumption is lost." (*See* Kaiser Br. 35 (citing to *Gen. Motors Corp. v. Saenz*,

---

[16] *See also Ayeni v. State*, 440 S.W.3d 707, 712 (Tex. App.—Austin 2013, no pet.) (holding that affidavits which attached sales tax returns and vendor receipts were insufficient to defeat summary judgment because they did not state "Ayeni's total sales amounts" and therefore did not raise a question of fact "as to the correct amount of sales taxes owed"); *Sundown Farms, Inc. v. State*, 89 S.W.3d 291, 294 (Tex. App.—Austin 2002, no pet.) (holding that invoices presented by taxpayer could not rebut the presumption because they were "not sufficiently detailed to compel the conclusion that the services described were exempt"); *Penny v. State*, No. 03-97-00399-CV, 1998 WL 394173, at *2 (Tex. App.—Austin July 16, 1998, no pet.) (mem. op.) (not designated for publication) (holding that appellants who testified that they transferred the business and presented a warranty deed showing conveyance of the property did not overcome the presumption of correctness the Comptroller's certificate).

873 S.W.2d 353 (Tex. 1993).)  In *General Motors*, the Texas Supreme Court considered the '*Magro* presumption' in products liability cases, which provides a presumption that, for the purposes of causation, an adequate warning from the manufacturer would have been read and heeded.  873 S.W.2d at 357–59.  The *General Motors* Court made clear that the only effect of the *Magro* presumption is "to shift the burden of producing evidence to the party against whom it operates."  *Id.* at 359.  Though cases have described the prima facie effect of a Comptroller's certificate as a "presumption of correctness," it does not follow from the use of the word 'presumption' that judicially-created presumptions, which merely shift the burden of production, operate in the same manner as a Comptroller's certificate that is granted evidentiary weight by statute.

Appellants also cite to *Sundance Oil Co. v. Aztec Pipe & Supply Co., Inc.*, 576 S.W.2d 780 (Tex. 1978), for the proposition that a sworn account is deficient and "not prima facie evidence of the debt when the movant's own pleadings and exhibits raise a fact question of whether the nonmovant was a party to the transaction."  (*See* Kaiser Br. 35.)  Suits on sworn account are governed by Texas Rule of Civil Procedure 185, which states that the filing of specific pleadings with exhibits and affidavits "shall be taken as prima facie evidence . . . unless the party resisting such claim" files a verified denial.  Tex. R. Civ. P. 185.  *Sundance* merely stands for the proposition that where the pleadings and exhibits required by Rule

28

185 are *internally* inconsistent, they do not meet the requirements of Rule 185 and cannot trigger its evidentiary effect. In this case, the only document required to trigger section 111.013's evidentiary effect is the Trial Certificate. Because that Certificate unambiguously discloses Appellant Jeff Kaiser, P.C.'s liability for unpaid franchise tax, penalties, and interest, *Sundance* is irrelevant. (3 RR 5.)

Finally, Appellants cite to *Parker v. State*, 40 S.W.3d 555 (Tex. App.—Austin 2001, no pet.), arguing that interlineations on the tax reports "raised an issue regarding taxes assessed and collected that was not addressed in the certificate." (Kaiser Br. 37.) *Parker* is inapplicable to this case. In *Parker*, the State brought suit against an individual pursuant to section 111.016 of the Tax Code to recover sales tax, penalties, and interest originally incurred by his corporation. *Parker v. State*, 36 S.W.3d 616, 617–18 (Tex. App.—Austin 2000, no pet.). The *Parker* Court held that the State was required to "prove the actual amount he received or collected," a necessary element of section 111.016, because that element—actual collection—was not addressed in the certificate. *Id.* at 618. Unlike *Parker*, the State's claim against Jeff Kaiser, P.C.,[17] which requires only proof of the amount and its delinquency, is not subject to any additional element not addressed by the Trial Certificate.

---

[17] Appellant Jeffery Kaiser's individual liability under section 171.255 of the Tax Code for any delinquency of Jeff Kaiser, P.C. was not challenged below and has not been raised on appeal.

**III.** **The State Offered Legally Sufficient Evidence to Support the Trial Court's Award of $2,500.00 in Attorney's Fees**

Under the traditional method of awarding fees applicable in this case, documentary evidence is not a prerequisite. *Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) (citing *In re A.B.P.*, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.)). It has consistently been held that an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award. *Id.; see also Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex. 1990) (per curiam) (requiring consideration of factors including nature and complexity of case, nature of services provided by counsel, time required for trial, amount of money involved, client's interest that is at stake, responsibility imposed upon counsel, and skill and expertise required). Where an appellant, as here, challenges the amount of attorney's fees awarded,[18] those amounts are reviewed under a legal sufficiency standard, viewing the evidence in a light that tends to support the disputed finding and disregarding evidence and inferences to the contrary. *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied). "If more than a scintilla of evidence supports the challenged finding, the legal sufficiency challenge must fail." *Id*. Because the

---

[18] Appellant has not challenged the *availability* of attorney's fees in this case, which were awarded under section 2107.006 of the Texas Government Code.

State's counsel testified as to his experience, the total amount of fees, and the reasonableness of the fees, there is more than a scintilla of evidence to support the State's $2,500 attorney fee award and Appellants' challenge should be rejected. *Kinnard v. Braziel Cooler-Freezer Mfg., Inc.*, No. 10-06-00103-CV, 2007 WL 2315962, at *3 (Tex. App.—Waco Feb. 14, 2007, no pet.) (overruling legal sufficiency challenge to trial court's award of attorney's fees where counsel testified as to a reasonable rate and an approximate number of hours expended).

The State's trial counsel, John Adams, began his attorney's fee testimony by briefly outlining his experience, which includes over 15 years of practice with the Office of the Attorney General. (2 RR 27–28.) Mr. Adams then testified as to the complexity of the case and expressly identified two unique issues that contributed to the complexity: the question of whether bankruptcy discharged franchise taxes and application of the statute of limitations. (2 RR 28.) Mr. Adams went on to identify the tasks he performed prior to trial including "legal research, reviewing . . . documents, drafting and preparing for a hearing on a motion for summary judgment and attending the motion for summary judgment hearing. (2 RR 28.) Finally, Mr. Adams testified that these tasks took him at least 10 hours and that a reasonable rate would be $250 dollars per hour. (2 RR 28–29.) After Mr. Adams completed his testimony, counsel for Appellants asked whether Mr. Adams had kept time records and moved to strike Mr. Adams'

testimony,[19] but did not cross-examine Mr. Adams regarding his experience, his actions in the case, or the reasonableness of the fee requested.

Oral testimony similar to Mr. Adams' is regularly held to be legally sufficient to support attorney's fees.[20] *See Legere v. Legere*, No. 03-12-00046-CV, 2013 WL 692450, at *8 (Tex. App.—Austin Feb. 22, 2013, no pet.) (affidavit testifying that attorney had been licensed in Texas since May 2001, that his hourly rate of $250 "is a reasonable rate for a family law attorney in Travis County" and that "he had worked more than 40 hours trying to resolve the case" was sufficient to support a $2,500 fee award); *Kinnard*, 2007 WL 2315962, at *3 (overruling legal sufficiency challenge to trial court's award of attorney's fees where counsel testified as to a reasonable rate and an approximate number of hours expended).

In their brief, Appellants cite *El Apple I, Ltd. v. Olivas*, for the premise that, because the State did not rely on documentary evidence, the State's evidence in support of its attorney's fee award was legally insufficient.[21]  370 S.W.3d 757

---

[19] The motion to strike was implicitly denied by the entry of the trial court's judgment.  That denial has not been challenged by Appellant.

[20] Attorney fee testimony is "taken as true as a matter of law" if the testimony, like Mr. Adams' testimony, "is not contradicted by any other witness and is clear, positive, direct, and free from contradiction[,]" especially where, as here, the opposing party had an opportunity to disprove the testimony but failed to do so.  *Legere*, 2013 WL 692450, at *7.

[21] Appellants erroneously refer to an abuse of discretion standard for reviewing the amount of an attorney's fee award.  That is the standard for whether attorney's fees should be available in the first instance.  *See Bauer v. Williams*, No. 03-07-00494-CV, 2008 WL 3166311, at *2 (Tex. App.—Austin Aug. 8, 2008, no pet.) (in UDJA context, explaining that the "question of a judge's decision to award or not award attorney's fees is reviewed on appeal for an abuse of discretion") (citing *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004)).

(Tex. 2012). The legal issues in *Olivas* are inapposite to the present appeal. In *Olivas*, the Supreme Court analyzed an attorney's fee claim under the Texas Commission on Human Rights Act (TCHRA). *Id.* at 758–59. As the Supreme Court explained, "Texas courts have looked to federal law in applying" the TCHRA, including its attorney's fee provision, and imported the federal "lodestar method" used in Title VII attorney's fee claims into the TCHRA. *Id.* at 760. Thus, the *Olivas* Court's analysis of the legal sufficiency requirements for the federal "lodestar method"[22] is not relevant to a claim for attorney's fees that arises under another statute. *See, e.g., Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *7, 8 (Tex. App.—Fort Worth May 8, 2014, no pet.) (summarizing intermediate court decisions holding that *Olivas* "does not require admission of hourly time records in all cases" and holding that *Olivas* does *not* "mean that evidence of attorney's fees is legally insufficient in an ordinary, non-lodestar, hourly-fee breach of contract case unless contemporaneous time records

_____

As this Court has stated, a challenge to the evidentiary support for the amount of fees is a challenge to legal sufficiency. *Hertzberg v. Austin Diagnostic Clinic Assoc., P.A.*, No. 03-07-00072-CV, 2009 WL 2913620, at *6 (Tex. App.—Austin Sept. 11, 2009, no pet.) ("[W]e review the amount of attorney's fees awarded under a legal-sufficiency standard[.]"). Indeed, that is the basis for reversal in the case on which Appellants' rely. *Olivas*, 370 S.W.3d at 764 ("[W]e hold that the fee application and proof in this case did not provide the trial court legally sufficient evidence to calculate a reasonable fee award[.]").

[22] Throughout its opinion in *Olivas,* the Supreme Court regularly caveated its legal holdings as only applicable where, unlike here, an attorney is "applying for a fee under the lodestar method." *Olivas*, 370 S.W.3d at 759–60 ("Although state procedural rules govern the determination of attorney's fees in a suit brought under state law, Texas courts have looked to federal law in applying our own statute, including section 21.259(a) of the TCHRA. . .").

are admitted into evidence."); *see also Metroplex Mailing Servs.*, 410 S.W.3d at 900 ("[*Olivas*] has no bearing on non-lodestar awards of fees such as those made in breach of contract cases."). Indeed, in *Olivas*, the Supreme Court twice distinguished Texas caselaw that the court summarized as holding that "detailed billing records or other documentation" are not required "as a predicate to an attorney's fees award" specifically because those cases involved "a different statute and a different issue." 370 S.W.3d at 762 ("While Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, the requirement has merit in contested cases under the lodestar approach."). Finally, the fee statute in this case states that the Attorney General can recover fees "in the same manner as provided by general law[,]" thereby expressly rejecting any heightened standard, like the standard in *Olivas*. Tex. Gov't Code § 2107.006.

But *Olivas* is not only legally distinguishable, it is also factually distinct. In *Olivas*, the plaintiff sought to recover $464,000 in attorney's fees for 890 hours of work by multiple attorneys and legal assistants in a case where the plaintiff was successful on only one of multiple claims and recovered only slightly more than $100,000 in damages.[23] That is to say that, in *Olivas*, the attorney's fees amounted

---

[23] *Olivas*, 370 S.W.3d at 765 ("The jury awarded Olivas $1,700 in back pay and $103,000 for past and future compensatory damages[,] . . . $464,000 [in] attorney fees and $6,500 [in] paralegal fees[,] . . . [but t]he court of appeals reversed the back-pay award. . .").

to more than 450% of the damages awarded; a ratio that would raise any jurist's eyebrow. In contrast, here the State sought a fee that amounted to less than 7% of the debt at issue and sought compensation for only 10 hours of work preparing, briefing, and attending both a summary judgement motion and a bench trial where Plaintiff prevailed on all claims.

Appellants' argument rests entirely on *Olivas*, a case that is factually and legally inapplicable. Mr. Adams' attorney's fee testimony was clear and direct and comported with the general standard for attorney's fees that governs this case. It provided more than a scintilla of evidence to support the attorney's fee award. Appellants' legal sufficiency argument should be rejected. *See Kinnard*, 2007 WL 2315962, at *3 (overruling legal sufficiency challenge to trial court's award of attorney's fees where counsel testified as to a reasonable rate and an approximate number of hours expended).

## CONCLUSION AND PRAYER

The State respectfully asks this Court affirm the trial court's Judgment.

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General
For Civil Litigation

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

*/s/ Sean M. O'Neill*
KEVIN R. SAUER
Assistant Attorney General
State Bar No. 24088355
kevin.sauer@texasattorneygeneral.gov
SEAN M. O'NEILL
Assistant Attorney General
State Bar No. 24070354
sean.oneill@texasattorneygeneral.gov
Bankruptcy & Collections Division
P. O. Box 12548, MC 008
Austin, Texas 78711-2548
Tel.: (512) 463-2173
Fax: (512) 936-1409
ATTORNEYS FOR APPELLEE
THE STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

1.      This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because, according to the Microsoft Word 2013 word court function, it contains 9,159 words on pages xi and 1–36, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure Rule 9.4(i)(1).

2.      This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in Microsoft Word 2013 using a conventional typeface in 14-point font except for footnotes, which are 12-point font.

*/s/ Kevin R. Sauer*
KEVIN R. SAUER

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Brief of Appellee* was served electronically on:

George F. May
TWOMEY | MAY, PLLC
2 Riverway, 15th Floor
Houston, Texas 77056

*/s/ Kevin R. Sauer*
KEVIN R. SAUER

No. 03-15-00019-CV

IN THE COURT OF APPEALS FOR THE THIRD JUDICIAL DISTRICT
AUSTIN, TEXAS

JEFF KAISER, P.C. AND
JEFFERY BENEDICT KAISER
                                        *Appellants,*

vs.

THE STATE OF TEXAS,
                                        *Appellee.*

Appeal from the 98th District Court of Travis County, Texas,
No. D-1-GV-13-000790, Honorable John Wisser presiding

**APPENDIX TO
BRIEF OF APPELLEE**

Tab 1:   Trial Court Judgment

Tab 2:   Trial Court's Findings of Fact and Conclusions of Law

Tab 3:   Section 111.202 of the Texas Tax Code

# Appendix

# TAB 1

Filed in The District Court
of Travis County, Texas

DEC - 2 2014 RT

At _____ 11.50 A M.
Amalia Rodriguez-Mendoza, Clerk

NO. D-1-GV-13-000790

| | | |
|---|---|---|
| THE STATE OF TEXAS | ' | IN THE DISTRICT COURT OF |
| VS | ' | TRAVIS COUNTY, TEXAS |
| JEFF KAISER, P.C. AND JEFFERY BENEDICT KAISER, A/K/A JEFFREY B. KAISER | ' | 98TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

BE IT REMEMBERED that on October 27, 2014, the above-entitled and numbered cause came before the Court for trial; and the Court proceeded to consider the pleadings and the evidence admitted at trial, and the arguments of counsel; and the Court found that judgment should be rendered for Plaintiff; it is therefore

ORDERED that Plaintiff, THE STATE OF TEXAS, recover from Defendants JEFF KAISER, P.C. AND JEFFERY BENEDICT KAISER, A/K/A JEFFREY B. KAISER, jointly and severally, the sum of $34,776.53, which sum represents the franchise tax, penalties and interest, shown in the Comptroller's certificates admitted into evidence in this matter, plus interest at the statutory rate specified in Ch. 111.010 of the Texas Tax Code on those amounts from October 27, 2014 until paid; and it is further

ORDERED that Plaintiff, the State of Texas, recover from the Defendants JEFF KAISER, P.C. AND JEFFERY BENEDICT KAISER, A/K/A JEFFREY B. KAISER, jointly and severally, the sum of $2,500.00 as its reasonable and necessary attorney's fees; plus court costs herein incurred and court costs which may hereafter be incurred in the collection of this judgment if the same be necessary, for all of which execution and other process necessary to enforce this judgment may issue.

This judgment finally disposes of all parties and all claims and is appealable.

SIGNED this the _____1st_____ day of ___December___, 2014.

_____
JUDGE PRESIDING

81

# Appendix

# TAB 2

**D-1-GV-13-000790**

| | | |
|---|---|---|
| THE STATE OF TEXAS | ' | IN THE DISTRICT COURT OF |
| | ' | |
| VS. | ' | TRAVIS COUNTY, TEXAS |
| | ' | |
| JEFF KAISER, P.C. AND | ' | |
| JEFFERY BENEDICT KAISER, | ' | 98TH JUDICIAL DISTRICT |
| A/K/A JEFFREY B. KAISER | ' | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On the 27th day of October 27 2014, came on to be heard the above numbered and styled cause. Having heard the testimony, admitted exhibits into evidence, and entertained argument of counsel the Court makes the following findings and conclusions:

### FINDINGS OF FACT

1. Jeff Kaiser, P.C. was a Texas Professional Corporation.

2. Jeff Kaiser, P.C. was incorporated on or about July 10, 2001 by filing Articles of Incorporation with the Texas Secretary of State.

3. Jeff Kaiser was the initial director of Jeff Kaiser, P.C. listed in the Articles of Incorporation.

4. Jeff Kaiser, P.C. did not file its first Franchise Tax/Public Information Report when due.

5. On January 28, 2003, the Texas Comptroller of Public Accounts forfeited the corporate privileges of Jeff Kaiser, P.C. because the corporation failed to file its first Franchise Tax/Public Information Report when that report was due.

6. The Texas Secretary of State forfeited the corporate charter of Jeff Kaiser, P.C. on August 22, 2003.

7. On December 22, 2008, Jeff Kaiser, P.C. filed Franchise Tax Returns for calendar years 2004, 2005, 2006, 2007 and 2008.

1

8. The Texas Comptroller of Public Accounts has certified to the Texas Attorney General that Franchise Taxes are delinquent from Jeff Kaiser, P.C.

9. On October 27, 2014, the date of trial of this case, the sum of $34,776.53 in franchise taxes, penalties and interest was due from Jeff Kaiser, P.C.

10. Jeff Kaiser, listed as the initial director of Jeff Kaiser, P.C. is the same person as Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser, the named individual defendant in this lawsuit.

11. Jeff Kaiser was the sole officer and director of Jeff Kaiser, P.C.

12. On April 15, 2013, the Texas Comptroller of Public Accounts filed a State Tax Lien against Jeff Kaiser, P.C. for the delinquent Franchise Taxes.

13. The franchise taxes delinquent from Jeff Kaiser, P.C. are accurately stated and quantified in Exhibit B to Plaintiff's Original Petition in this case, a Certified Claim for Texas Franchise Tax from the Texas Comptroller of Public Accounts.

14. Plaintiff brought suit against Defendants pursuant to Section 171.255 of the Texas Tax Code.

15. On August 8, 2008, Defendant Jeffery Benedict Kaiser filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the Houston Division of the United States Bankruptcy Court; Case No. 08-35261.

16. The Plaintiff entered no appearance, nor filed any Proof of Claim in the Bankruptcy case of Jeffery Benedict Kaiser.

17. On July 15, 2009, Defendant Jeffery Benedict Kaiser was granted an unrestricted general discharge in the bankruptcy case.

18. On April 15, 2013, nine (9) years and eight (8) months after the forfeiture of the corporate charter of Jeff Kaiser, P.C.; and three (3) years and eight (8) months after Defendant Jeffery Benedict Kaiser's Bankruptcy Discharge, the Texas Comptroller of Public Accounts filed a tax lien against Jeff Kaiser, P.C. for the taxes allegedly owed by Defendant Jeff Kaiser, P.C. for the tax years 2004, 2005, 2006, and 2007.

19. On August 2, 2013, the State of Texas filed this lawsuit against Jeff Kaiser, P.C., and the individual former officer/director of that corporation, Jeffery Benedict Kaiser.

20. August 2, 2013 is less than three years after April 15, 2013.

21. The attorney's fee requested by Plaintiff, The State of Texas, in the amount of $2,500.00 is reasonable in this case.

2

# CONCLUSIONS OF LAW

1. This case was brought by the State of Texas to secure a judgment for delinquent franchise taxes against the permitted taxpayer, Jeff Kaiser, P.C. pursuant to Chapter 171 of the Texas Tax Code, and to impose personal liability for the delinquent franchise taxes on the individual defendant, Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser, pursuant to Texas Tax Code §171.255.

2. In their Answer, Defendants raised the defense of the statute of limitation to Plaintiff's cause of action to recover delinquent franchise taxes.

3. The statute of limitation applicable to this case is Texas Tax Code §111.202, which provides in part: "At any time within three years after a deficiency or jeopardy determination has become due and payable or **within three years after the last recording of a lien**, the comptroller may bring an action in the courts of this state…"

4. The State's recording of its tax lien on April 15, 2013, commenced the running of the statute of limitation in this case.

5. The State's filing of suit on August 2, 2013 was timely under Texas Tax Code §111.202. The State's cause of action for recovery of delinquent franchise taxes is not barred by the statute of limitation.

6. In his Answer, Defendant Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser raised the defense of Discharge in Bankruptcy to his personal liability for the franchise taxes made the subject of this lawsuit.

7. At or prior to trial, Defendant Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser abandoned the defense of Discharge in Bankruptcy to his personal liability for the franchise taxes made the subject of this lawsuit by failing to raise, argue or offer evidence to support the defense of Discharge in Bankruptcy.

8. Regardless of Defendant's abandonment of the defense of Discharge in Bankruptcy, the taxes made the subject of this lawsuit are excepted from discharge in bankruptcy by the operation of Bankruptcy Code, 11 U.S.C. §523(a)(1)(B)(ii). That section excepts from discharge any taxes for which a return is required and for which the returns are filed after they were due, and after two years before the date of filing the petition in bankruptcy.

3

9. Pursuant to Texas Tax Code §111.013, the Texas Comptroller's Certified Claim for Texas Franchise Tax constitutes prima facie evidence of:

> (1) the stated tax or amount of the tax, after all just and lawful offsets, payments, and credits have been allowed;
> (2) the stated amount of penalties and interest;
> (3) the delinquency of the amounts; and
> (4) the compliance of the comptroller with the applicable provisions of this code in computing and determining the amount due.

10. Neither Defendant Jeff Kaiser, P.C. nor Defendant Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser offered evidence sufficient to overcome the statutory presumptions in favor of the State's Certified Claim for Texas Franchise Tax.

11. Pursuant to Texas Tax Code §171.255, as an officer and director of Jeff Kaiser, P.C., Defendant Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser is personally liable for the delinquent franchise taxes of Jeff Kaiser, P.C. that accrued after the corporate privileges of Jeff Kaiser, P.C. were forfeited for the failure to file a report or pay a tax or penalty and before such corporate privileges were revived.

12. Defendants Jeff Kaiser, P.C. and Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser are jointly and severally liable for the delinquent franchise taxes made the subject of this lawsuit.

13. Plaintiff, The State of Texas, is entitled to recover attorney's fees pursuant to TEX. GOVT CODE ANN. § 2107.066.

14. Defendants Jeff Kaiser, P.C. and Jeffery Benedict Kaiser, a/k/a Jeffrey B. Kaiser are jointly and severally liable for the attorney's fees awarded to Plaintiff in this case.

Signed on the 21st day of December, 2014.

_____
HON. JON WISSER
JUDGE PRESIDING

4

# Appendix

# TAB 3

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 2. State Taxation (Refs & Annos)
      Subtitle B. Enforcement and Collection (Refs & Annos)
        Chapter 111. Collection Procedures (Refs & Annos)
          Subchapter D. Limitations (Refs & Annos)

V.T.C.A., Tax Code § 111.202

§ 111.202. Suit Limitation

Currentness

At any time within three years after a deficiency or jeopardy determination has become due and payable or within three years after the last recording of a lien, the comptroller may bring an action in the courts of this state, or any other state, or of the United States in the name of the people of the State of Texas to collect the amount delinquent together with penalties and interest.

**Credits**
Acts 1981, 67th Leg., p. 1508, ch. 389, § 1, eff. Jan. 1, 1982.

Notes of Decisions (2)

V. T. C. A., Tax Code § 111.202, TX TAX § 111.202
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.